John T. CHANDLER, Square Deal Auto Sales, Inc.,
Cloverdale Liquor, LLC., Mega Fireworks, Inc.,
Baselinechicot Mini-Storage, Budget Tax Service,
Corn Insurance Agency, Inc., John P. Corn,
Meramec Specialty Company, T.E.A. Enterprises *v.*
The CITY OF LITTLE ROCK, Arkansas

01-1337                                    89 S.W.3d 913

Supreme Court of Arkansas
Opinion delivered November 21, 2002

*John P. Corn*, for appellant.

*Stephen R. Giles*, for appellee.

JIM HANNAH, Justice. Appellants John T. Chandler; Square Deal Auto Sales, Inc.; Cloverdale Liquor, LLC; Mega Fireworks, Inc.; Baseline Chicot Mini-Storage; Budget Tax Service; Corn Insurance Agency, Inc.; John P. Corn, Meramec Specialty Co., and T.E.A. Enterprises, challenged the City of Little Rock's ("City") annexation of unincorporated areas or "islands" surrounded by the Little Rock city limits. The trial court found that the City ("Appellee") met the statutory requirements for annexation. Appellants argue that Appellee did not meet the statutory requirements for annexation because the disputed area was not needed for proper municipal purposes and because the disputed area was not adaptable for prospective municipal uses. We find no error in the trial court's findings and, accordingly, we affirm.

*Facts*

On December 7, 1999, the City of Little Rock passed Ordinance No. 18155, which provided for the annexation of eleven unincorporated areas or "islands" surrounded by the Little Rock city limits. The eleven parcels were identified as islands "A" through "K". On December 17, 1999, Appellants John T. Chandler; Square Deal Auto Sales, Inc.; Cloverdale Liquor, LLC; Mega Fireworks, Inc.; Baseline Chicot Mini-Storage; Budget Tax Service; Corn Insurance Agency, Inc.; and John P. Corn filed suit to set aside the annexation. Appellants Meramec Specialty Co., and T.E.A. Enterprises filed a motion to intervene on May 1, 2000. On June 13, 2001, the trial court entered an order denying and dismissing Appellants' complaints to set aside the annexation.

Though several issues were raised at trial, Appellants limit their appeal to the issue of the annexation of the "Coleman property," which is located within Island "D." The Coleman family has used the property for agricultural purposes. The Coleman property is within the floodway, although a small portion of the northwest corner is designated in the floodplain in a revised, but yet unapproved, map.[1] Mabelvale Pike runs along the eastern boundary of Island D. Part of Mabelvale Pike is in the City, and part is in Pulaski County. Appellants argue that the trial court erred in finding that the Coleman property met the statutory requirements for annexation.[2]

---

[1] Jim Narey, Flood Plain Manager for Pulaski County, testified that "[t]he floodway is a channel of the river or stream that is used to help displace the base flood, sometimes called the hundred-year flood, so as not to affect a designated amount of rise in the surface elevation of the water." The floodplain, Narey testified "are lands generally adjacent . . . to streams, rivers, creeks that are subject to be inundated by water from any source."

[2] Island D consists of small parcels of property containing several buildings which house retail businesses on the eastern boundary, as well as approximately 100 acres of property which belong to the Coleman family. Since the dispute is based primarily on the Coleman property, and not the other small parcels of land located within Island D, for convenience, we will refer to the property as the "Coleman property."

## Standard of Review

■ In annexation cases, there is a wide latitude for divergence of opinion, and consequently, a high degree of reliance must be placed upon the findings of the trial judge. *Holmes v. City of Little Rock*, 285 Ark. 296, 686 S.W.2d 425 (1985); *Faucett v. City of Atkins*, 248 Ark. 633, 453 S.W.2d 64 (1970). Our task is not to decide where the preponderance of the evidence lies, but to ascertain whether the trial court's findings of fact are clearly erroneous. Ark. R. Civ. P. 52; *Town of Houston v. Carden*, 332 Ark. 340, 965 S.W.2d 131 (1998); *Chappell v. City of Russellville*, 288 Ark. 261, 704 S.W.2d 166 (1986); *Holmes, supra.*

## Statutory Requirements for Annexation

■ ■ A city may annex lands which are either (1) platted and held for sale or use as municipal lots; (2) whether platted or not, if the lands are to be sold as suburban property; (3) when the lands furnish the abode for a densely settled community or represent the actual growth of the municipality beyond its legal boundary; (4) when the lands are needed for any proper municipal purposes such as for the extension of needed police regulation; or (5) when they are valuable by reason of their adaptability for prospective municipal uses. Ark. Code Ann. § 14-40-302(a) (Repl. 1998).[3] The five criteria of Ark. Code Ann. § 14-40-302(a) are to be considered in the disjunctive, and the annexation of the land is proper when the proof sufficiently complies with any one of the conditions. *Holmes, supra; Faucett, supra.* If a part of the proposed area does not meet one of the five requirements, the annexation of the entire area is void *in toto. Carden, supra; Gay v. City of Springdale*, 298 Ark. 554, 769 S.W.2d 740 (1989) (*Gay II*); *Chappell, supra.* The burden of proof in an action to prevent annexation is placed on the remonstrants to prove that the area should not be annexed. *Carden, supra; Gay II, supra.*

---

[3] At the time the complaint was filed in the present case, Ark. Code Ann. § 14-40-302(a) (Repl. 1998), applied. The 2001 amendment to Ark. Code Ann. § 14-40-302(a) did not alter the statutory requirements for annexation.

Appellants argue that the Coleman property does not meet any of the five criteria of Ark. Code Ann. § 14-40-302(a). Further, Appellants argue that the highest and best use of the Coleman property is for agricultural purposes. Both Appellants and the Appellee agree that the first three criteria, as set out in Ark. Code Ann. § 14-40-302(a), are inapplicable to the present case. At issue are the fourth and fifth requirements of Ark. Code Ann. § 14-40-302(a). Accordingly, we will limit our discussion to the disputed statutory requirements.

## Lands Needed for Proper Municipal Purposes

Appellants argue that there is no need for police and fire regulation of the Coleman property. Appellants cite testimony from Stuart Thomas, Assistant Police Chief of the Little Rock Police Department, who testified that he had worked for the City for twenty-two years, and that as of December 21, 2000, he knew of no incidents where the Little Rock Police Department was called to the Coleman property. Buddy Coleman, owner of the Coleman property, testified that he had called the sheriff once after he discovered that children were shooting BB guns at his cows.

Fire Marshal Lane Kinder of the Little Rock Fire Department testified that he had worked for the fire department for thirty-one years and knew of only one incident where the fire department went to the Coleman property. He stated that the fire department was called to the Coleman property after a hay barn had caught on fire. Appellants pointed out that the portion of the property where the barn was located was within the city limits of Little Rock.

Further, Appellants argue that there is no need for the extension of any other municipal purposes, i.e., water and sewer service, to the Coleman property. Jim McClelland, a civil engineer and expert witness for Appellants, testified that he knew of no municipal services necessary for the Coleman property.

Appellee argues that the testimony of Assistant Chief Thomas and Fire Marshal Kinder, as well as the testimony of county officials, shows that the Coleman property meets the requirements for annexation. Appellee states that, according to the testimony of

Assistant Chief Thomas, the annexation of the Coleman property would improve police call response time. Thomas explained that 911 calls are identified and routed by caller location. He testified that if a call were made about an incident occurring on the Coleman property, the call would register as a county address, and thus, the call would be routed to the Pulaski County Sheriff's Department.

On the other hand, Thomas testified that if a call were made from a City address about an incident occurring in the county, the call would be routed to the Little Rock police, which would then transfer the case to the county sheriff. Thomas also testified that Little Rock police units frequently drive past the Coleman property, and that it would cost the City no more to serve that area upon annexation.

Appellee states that the uncertainty concerning the City boundary around the Coleman property creates a confusing situation for the fire department. Kinder testified that whether the fire department from the City or the fire department from the county responded to a fire on the Coleman property would depend on the exact location of the fire on the property. In addition, Coleman testified that if there were a fire on his property that his employees could not handle, then he would call the Little Rock Fire Department.

The trial court found, through the testimony of city and county fire and police officials, that the City satisfied the fourth requirement of Ark. Code Ann. § 14-40-302(a), that the lands would be "needed for any proper municipal purposes such as for the extension of needed police regulation." The trial court noted that the City pointed out in its brief that the emergency clause of Act 314 of 1979, which was codified as Ark. Code Ann. § 14-40-501 (Repl. 1998), states that small, unincorporated islands within city limits cause "great confusion to the public and also great expense to municipalities in having to run vital services around these islands."

The trial court also noted that the sale of fireworks within the city limits is prohibited by ordinance; however, due to the fact that the Coleman family leases the northwest corner of

their property for the sale of fireworks, fireworks can be sold in the center of the City.

The trial court found that the extension of needed police regulation to the Coleman property, as well as the sale of fireworks on the Coleman property, justified the annexation under Ark. Code Ann. § 14-40-302(a)(4) (Repl. 1998). The trial court's findings regarding Appellee's need to annex the Coleman property for proper municipal purposes are not clearly erroneous.

### Adaptability for Prospective Municipal Uses

Appellants argue that Appellee has not met the fifth statutory requirement of Ark. Code Ann. § 14-40-302(a), that the property is adaptable for prospective municipal uses, because annexation of the Coleman property is prohibited pursuant to Ark. Code Ann. § 14-40-302(b)(1) (Repl. 1998). Ark. Code Ann. § 14-40-302(b)(1) provides, in part:

> (b)(1) Contiguous lands shall not be annexed when they . . .:
>
> (A) Have a fair market value at the time of the adoption of the ordinance of lands used only for agricultural or horticultural purposes and the highest and best use of the lands is for agricultural or horticultural purposes . . . .

Ark. Code Ann. § 14-40-302(b)(1) (Repl. 1998).

At the time of the adoption of the ordinance, the Coleman property was being used for agricultural purposes. Appellants argue that the highest and best use of the Coleman property is for agricultural purposes. Appellants and Appellee agree that the City plans to use the Coleman property for open space or parks.

Appellants argue that the testimony of county and city officials, as well as the testimony of expert witnesses, indicates that the Coleman property can be used only for agricultural purposes. Jim Narey, Flood Plain Manager for Pulaski County, testified that the Coleman property is currently located entirely in the floodway. In deposition testimony read for the record, Jim Lawson, Director of Planning and Development for the City, testified that City policy provides that permanent structures cannot be built in the floodway. Bryan Day, Director of Parks and Recreation, testified

that the City had no money to buy park property. Tom Ferstl and Bob McCarley, Appellants' expert witnesses in real estate, testified that it would not be economically feasible to use the Coleman property for anything other than agricultural purposes. Jim McClelland, a licensed engineer testifying for Appellants, stated that it would not be economically feasible to do anything with the property other than leave it as pastureland. Buddy Coleman testified that, in his opinion, the highest and best use of the property was for agricultural purposes. Coleman also testified that he had made efforts to develop the property in the past, but none of his efforts had been successful due to restrictions placed on developing the property.

Appellee argues that the trial court made specific findings that the Coleman property is more valuable for its prospective use as a city park than for its current use as a cow pasture. Day testified that the Coleman property has been included in the City's Fourche Bottoms Natural Project as an extension of the 1400 acres immediately to the east across Mabelvale Pike, which was annexed in 1996, and is now owned by the City for a proposed chain of parks. The Project will eventually feature natural areas, canoe rentals, and hiking trails through the Coleman property. Dwight Pattison, an independent fee appraiser and city planning consultant, testified that the Coleman property would be best used for industrial and recreational purposes. Pattison testified that soil samples taken from the Coleman property reveal a relatively low quality soil for agricultural purposes. He also testified that many city parks are encumbered with floodplain and floodway designation. Pattison further testified that the soccer fields at Burns Park in North Little Rock were constructed at elevations in the floodway, which were virtually identical to the floodway elevations of the Coleman property.

After hearing expert testimony from both sides, the trial court determined that the best use of the Coleman property was industrial and recreational, not agricultural. In its findings, the trial court noted that the property is surrounded by the most populous city in the state. The trial court also noted that the property is within walking distance of the University of Arkansas at Little Rock, and that two major shopping centers and other businesses

are nearby. The trial court found that the Coleman property was the only parcel in the annexation which is presently used for agricultural purposes. The trial court stated: "It is somewhat ludicrous to state that the highest and best use of any property located where the Coleman property is located – in the geographic center of the City – is agricultural."

The trial court acknowledged that the Coleman property is used for agricultural purposes by the present owners. However, the trial court noted that in *Gay II*, we stated that "[t]he fact that land is agricultural and the owner does not want it developed does not determine its fate as to annexation." *Gay II*, 298 Ark. at 558. We also stated that "[i]t is proper for a city to annex property if it is needed for the purpose of making improvements and if the value of the land is derived from actual and prospective use for city purposes." *Id.*

The trial court acknowledged that much of the Coleman property is in the floodway, and strict federal guidelines apply to any development of floodway land because of flood control. The trial court further acknowledged that structures cannot be built on property located in the floodway, and that property located in the floodway is not suitable for much development. In light of this, the trial court found that many of the City's parks, i.e., Boyle Park, and North Little Rock's parks, i.e., Burns Park are located within the floodway.

The trial court also pointed out that the Coleman property has been on the City's park plan for nearly a century. In *Lee v. City of Pine Bluff*, 289 Ark. 204, 710 S.W.2d 205 (1986), we stated that "[s]imply because land is in a flood plain does not exclude it from consideration for annexation." *Lee, supra*. Further, we stated that "[i]f a city could not encompass a flood plain, it would mean its legal boundary could not be extended beyond a low lying area, creek or swampland, although the growth of the urban area continued on the other side; or it would mean the city limits would somehow have to jump or go through the flood plain." *Id.*

We note that part of the Coleman property is in the floodplain, and part is in the floodway. Though *Lee* discussed property

located only in the floodplain, we believe that the reasoning in *Lee* applies to the present case. The trial court found that many of the City's parks, i.e., Boyle Park, and North Little Rock's parks, i.e., Burns Parks are located within the floodway. We find it persuasive that parts of Burns Park were constructed at elevations in the floodway, which were virtually identical to the elevations in the floodway of the Coleman property. Land should not automatically be excluded from consideration for annexation simply because it is located in the floodway.

■ The trial court heard testimony and viewed exhibits regarding the use of the Coleman property and determined that the best use of the property would be industrial and recreational, not agricultural. The trial court's findings regarding the best use of the property are not clearly erroneous.

■ As stated previously, if a part of the proposed area for annexation does not meet one of the five statutory requirements for annexation, the annexation of the entire area is void *in toto*. *See Carden, supra; Gay II, supra; Chappell, supra*. In the present case, Appellants argued that the trial court erred when it found that a portion of Islands A through K, specifically, the Coleman property within Island D, failed to meet the statutory requirements for annexation. The order of the trial court in annexation cases will be upheld unless it is clearly erroneous. Ark. R. Civ. P. 52; *Carden, supra; Chappell, supra; Holmes, supra*. We cannot say that the findings by the trial court in the present case are clearly erroneous. Accordingly, we affirm the trial court's order dismissing Appellants' complaints to set aside the annexation of Islands A through K.

Affirmed.

IMBER, J., not participating.